17 F.3d 1442
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 Jeffrey C. HAMPSON, Petitioner,
v.
DEPARTMENT OF TRANSPORTATION, Respondent.
 No. 93-3282.
 United States Court of Appeals, Federal Circuit.
 Jan. 7, 1994.
 
 Before RICH, MAYER, and SCHALL, Circuit Judges.
 PER CURIAM.
 
 
 1
 Jeffrey C. Hampson appeals the decision of the Merit Systems Protection Board, No. PH1221920210-W-1, dated March 9, 1993, which affirmed Hampson's reassignment by the Department of Transportation, Federal Aviation Administration from the Lancaster Tower. We reverse.
 
 
 2
 It is undisputed by the parties on appeal that Hampson established that he engaged in activities that fall within the protection of the Whistleblower Protection Act when he made objection to illegal payroll practices at the Lancaster Tower. See 5 U.S.C. Sec. 2302(b)(8) (1988 & Supp. IV 1992). It is also undisputed that the deciding official, Mahlon Fuller, was motivated in part by Hampson's threatened disclosure of these illegal practices in making the decision to transfer Hampson back to the Philadelphia Tower.* The only issue before this court is whether the agency met its burden of proving by clear and convincing evidence that it would have made the decision to transfer Hampson even in the absence of his protected activity. See 5 U.S.C. Sec. 1221(e)(2) (1988 & Supp. IV 1992). Viewing the record in its entirety, and giving due deference to the fact finder's evaluation of the credibility of the witnesses, this court holds that the record fails to provide substantial evidence to support the Administrative Judge's conclusion that the agency met this burden.
 
 
 3
 The AJ determined that the agency would have transferred Hampson in the absence of the protected disclosures because of alleged flaws in his performance as a supervisor. This conclusion was based in significant part on evidence of two incidents which, according to the AJ, demonstrated these flaws: the "Bond confrontation" and an earlier incident involving Ron Schwartz. Most of the evidence presented on these incidents, as well as other evidence of Hampson's performance, was in the form of witness testimony. The AJ stated that much of the agency's case in support of its decision rested on the testimony of Fuller, and the AJ relied most heavily on his testimony, especially as to the Bond and Schwartz incidents. The AJ also focused on the testimony of David Smith as evidence contributing to the agency's clear and convincing proof of Hampson's alleged supervisory shortcomings.
 
 
 4
 Fuller's testimony indicates that he accepted Bond's version of the confrontation with Hampson. He further testified that he believed Hampson acted inappropriately in turning on the ceiling fan to dissipate the odor in the tower, and that it was an overreaction to order Bond out of the cab. This incident, according to Fuller, was so significant that it caused him to go back and reexamine Hampson's performance as far back as he could remember. As part of this "reevaluation," Fuller testified that he came to believe Hampson's performance had been lacking all along and that he formed a new belief that he was mistaken in crediting Hampson's account of the "Schwartz incident," even though it had occurred and been settled long before. The AJ found that Fuller had been uneasy about Hampson's performance, but despite this had continued to give Hampson satisfactory or better marks on his performance reviews. After reevaluating Hampson's performance history, Fuller came to the conclusion that Hampson lacked the necessary supervisory skills, and decided to transfer him out of the Lancaster Tower.
 
 
 5
 The testimony of Marilyn Martin, the only witness to the Bond incident other than Hampson and Bond, and who the AJ found to be a "neutral observer," contrasts both Fuller's testimony and the findings of the AJ about the incident. The AJ found that Hampson had engaged in an angry, raised voice confrontation. Martin testified, however, that Hampson never raised his voice or yelled, but in fact directed Bond not to yell at him. According to Martin, Hampson spoke in an "affirmative, authoritative tone." Martin's testimony further explains that Hampson, when faced with Bond's raised voice and confrontational attitude, ordered Bond to leave the tower. This direct order was ignored by Bond, who had to be told repeatedly to leave before finally complying with the order. From the account of the only disinterested witness, and contrary to Fuller's testimony, Hampson's behavior in dealing with an admittedly "argumentative employee" does not appear in any way an improper or excessive reaction.
 
 
 6
 The Bond incident was simply not a sufficient indication of any improper behavior on the part of Hampson to reasonably cause Fuller to make his subjective "reevaluation." The objective evidence of Hampson's past performance in the form of satisfactory or better written evaluations,** and Martin's third-party, disinterested account of the incident, belie the conclusion that Fuller had sufficient cause to question Hampson's supervisory abilities. In fact, the AJ found that the Bond incident, which occurred mere days after Hampson's threat to expose the tower's illegal comp-time practices to the FAA, was immediately seized upon by Fuller as a justification "to assemble evidence to support [Hampson's] swift removal from the facility." Slip op. at 17. Therefore, the evidence indicates that this incident was a "trigger" to Fuller, not because of his misgivings over Hampson's abilities, but as a convenient pretext for his "subjective reevaluation" motivated by Hampson's whistleblowing. The resulting evidence gathered, including Fuller's review of the Schwartz incident, is tainted in large part by this improper motivation, and cannot serve to support the agency's decision.
 
 
 7
 Finally, the testimony of Smith, characterized by the AJ as supporting the decision, does no such thing. Smith testified that he never had any problems with Hampson as his supervisor and that their working relationship was always professional. Any negative comments in Smith's testimony were admitted to be only the repeating of rumors or other hearsay statements about events he never witnessed. This testimony, if anything, supports a conclusion that Hampson's supervisory performance was exactly as his evaluations stated, satisfactory or better.
 
 
 8
 Viewed in the light of the objective evidence of Hampson's satisfactory performance and Martin's impartial account of the Bond incident, and taking into account the bias of other witnesses who were willing participants in the illegal activities in the tower and thus themselves stood to lose from Hampson's disclosure of the comp-time practices, Fuller's own subjective evaluation of Hampson's alleged supervisory shortcomings and the weak corroboration of the other witnesses cannot amount to clear and convincing evidence in support of the agency's action. After viewing the record as a whole and specifically focusing on the evidence relied upon most heavily by the AJ, this court holds that the record lacks the necessary evidence to support the board's decision and the agency's action must therefore be reversed.
 
 
 
 *
 The AJ specifically found "that [Hampson]'s threat to disclose th[e] admittedly illegal practices to higher FAA management convinced Fuller to remove [Hampson] from the Lancaster Tower as soon as he could." Hampson v. Department of Transp., No. PH1221920210-W-1, Slip op. at 16 (Sept. 30, 1992) [emphasis added]
 
 
 **
 In the written evaluation of March, 1991, Fuller described Hampson's performance with employee management as "fully successful," and "exceptional" as to employee involvement. As late as September, 1991, according to Art Gumtau, Fuller gave Hampson an "excellent recommendation" when contacted about a promotion opportunity